IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. TERRY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

VICTORIA R. TERRY, APPELLANT.

Filed February 26, 2019.    No. A-18-341.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Todd C. Molvar for appellant.

Douglas J. Peterson, Attorney General, and, on briefs, Joe Meyer for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Victoria R. Terry was convicted in the district court for Lancaster County of two counts of possession of a controlled substance. The court sentenced her to concurrent 180-day jail terms followed by 12 months' postrelease supervision. On appeal, Terry claims that her motions to suppress should have been granted due to violations of her right to be free of unreasonable searches and seizures and her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). She further claims the district court erred in imposing an excessive sentence for her convictions. We find no merit to the arguments raised on appeal and therefore affirm.

## II. BACKGROUND

In the early morning of April 24, 2017, Officer Kevin Meyer of the Lincoln Police Department was following a pickup truck traveling northbound in the far right lane of a three-lane street. In the course of about 6 seconds, the pickup merged from the far right lane into the center

lane and then from the center lane into the far left lane, where it turned left. The pickup did not display signal lights before the turn, but its driver did extend his arm out of the window horizontally to signal the turn. Because Meyer did not observe signal lights and because the pickup turned so abruptly, Meyer signaled the pickup to pull over.

Meyer found two occupants in the pickup, the driver and Terry, who had a backpack at her feet. The driver seemed excessively nervous to Meyer because he was shaking and unable to keep still. Meyer asked the driver about his recent narcotic use. The driver told Meyer he had used narcotics a few days before and, upon Meyer's request, consented to a search of his pickup. The driver withdrew his consent, however, after Terry told him that he was not required to allow the search.

As Meyer was filling out a warning citation for the driver, he searched the driver's and Terry's names in the police records management system. His search showed both had prior contacts for narcotics use, which prompted him to ask Officer Christopher Howard, a drug-detecting dog handler, and Officer Barksdale with the Lincoln Police Department to come to the traffic stop. Howard and a drug-detecting dog arrived 4 minutes after they were dispatched, and Meyer was still writing the warning citation when they arrived. The driver and Terry were asked to exit the vehicle before the dog was deployed.

The dog alerted and indicated the odor of a controlled substance coming from the passenger side of the pickup's cab. Meyer searched the pickup. Because he did not find any illegal items inside it, he searched the driver and Terry, who had taken her backpack with her when she exited the pickup. In the backpack, Meyer found a prescription bottle containing pills, which he identified as Adderall and Alprazolam using a pill identification website. The prescription label on the bottle did not show that it contained either substance. Meyer asked Terry if she had a prescription for Adderall of Alprazolam. She replied that she did not, but rather was holding them for a friend. Meyer did not question Terry further and arrested her.

The State charged Terry by information with two counts of possession of a controlled substance under Neb. Rev. Stat. § 28-416(3) (Reissue 2016).

Terry filed two motions to suppress. The first alleged that the stop, detention, search, and arrest violated her rights under the 4th, 5th, and 14th Amendments to the U.S. Constitution as well as article I, § 7, of the Nebraska Constitution. The second motion alleged that any statements, admissions, or confessions Terry made during the traffic stop were obtained in violation of her rights under the 5th, 6th, and 14th Amendments to the U.S. Constitution; article I, § 12, of the Nebraska Constitution; and *Miranda, supra*.

At the hearing on Terry's motions, the court received a video recording of the traffic stop into evidence, and Meyer and Howard both testified to the facts summarized above.

Meyer also testified that the pickup did not smell of alcohol or drugs during the traffic stop, and he did not see alcohol or drugs in it. Meyer indicated that he had arrested the driver a month before the traffic stop at issue in this case for the possession of a marijuana pipe. Before that arrest, Meyer had known the driver's reputation for substance abuse. The driver appeared more nervous to Meyer during this stop than he had during Meyer's interaction with him a month before. Meyer asked the driver for consent to search the pickup because of the driver's criminal history. He did

not read Terry her *Miranda* rights, and he did not hear Barksdale or Howard read them to Terry either.

Howard testified that his drug-detecting dog is trained to detect methamphetamine, marijuana, cocaine, and heroin odors, but is not trained to detect the odor of pills. Howard did not know how long he and the dog were at the scene of the stop, but he estimated that about 3 minutes passed between his arrival and the dog's alert and indication.

The court entered an order denying Terry's motions to suppress. The court found that because the driver did not approach the left turn in the extreme left-hand lane, Meyer had probable cause to stop the vehicle for the traffic infraction. The court noted that because of the driver's level of nervousness, Meyer's previous narcotics contact with the driver, and the driver's admission of using illegal drugs within a couple of days of the stop, Meyer called for Howard and the drug-detecting dog. The court found that their arrival did not delay the original purpose of the stop because Meyer had not yet completed his paperwork on the traffic stop. And because the dog alerted at the passenger side door, the court found that Meyer had probable cause to search the pickup, its passengers, and any containers that were in it, including Terry's backpack. The court also found that Terry was not under arrest when Meyer questioned her about the pills in her backpack, but rather she was subject to a lawful traffic stop and search. Thus, Meyer's questions were not a custodial interrogation or their functional equivalent, and Meyer was not required to read Terry her *Miranda* rights before asking them.

On January 23, 2018, the district court held a bench trial on stipulated facts. The stipulation stated that Meyer and Howard would testify at trial consistent with their testimony on the motion to suppress, their police reports, the video recording, and a laboratory report, each of which were received into evidence. Terry objected to the exhibits and testimony on the same grounds that she did in her motions to suppress. The court found Terry guilty on both counts of the State's information.

A sentencing hearing was held on March 30, 2018. The court noted Terry's failure to submit to a drug and alcohol evaluation and to admit she had a problem with drugs and alcohol. Because of Terry's past convictions for driving under the influence and attempted possession as well as her failure to take responsibility for the controlled substances in her possession in this case, the court found substantial and compelling reasons not to impose a sentence of probation. Giving Terry credit for 3 days served, the court ordered her to serve concurrent 180-day sentences in the Lancaster County Jail, followed by 12 months of postrelease supervision.

Terry appeals.

### III. ASSIGNMENTS OF ERROR

Terry assigns that the district court erred in (1) overruling her motions to suppress and (2) imposing an excessive sentence.

### IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether

those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018).

In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, including claims that it was procured in violation of the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), we apply a two-part standard of review. With regard to historical facts, we review the trial court's findings for clear error. *Id.* Whether those facts suffice to meet the constitutional standards, however, is a question of law which we review independently of the trial court's determination. *State v. Williams*, 26 Neb. App. 459, 920 N.W.2d 868 (2018).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Tucker*, 301 Neb. 856, 920 N.W.2d 680 (2018). A determination of whether there are substantial and compelling reasons under § 29-2204.02(2)(c) is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

## V. ANALYSIS

### 1. MOTIONS TO SUPPRESS

Terry assigns that the district court erred in overruling her motions to suppress. As discussed below, this assignment is without merit.

#### (a) Searches and Seizures

Terry argues the district court erred in failing to sustain her motion to suppress because probable cause did not support the traffic stop and because the officer did not have reasonable suspicion to extend that traffic stop. We disagree.

##### (i) Officer Had Probable Cause to Stop Pickup

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. *State v. Sievers*, 300 Neb. 26, 911 N.W.2d 607 (2018). A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d (2018). A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Abu-Serieh*, 25 Neb. App. 462, 908 N.W.2d 86 (2018).

The record contains sufficient evidence to conclude the driver committed a minor traffic violation. Neb. Rev. Stat. § 60-6,159(2) (Reissue 2010) describes how a driver should approach and execute a left turn:

> The driver of a vehicle intending to turn left at any intersection shall *approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle* and, after entering the intersection, the left turn shall be made so as to leave the intersection, as nearly as practicable, in the extreme left-hand lane lawfully available to traffic moving in such direction upon the roadway being entered.

Whenever practicable, the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

(Emphasis supplied.)

The police cruiser video shows a pickup driving in the far-right lane of a three-lane street. No other vehicles were driving on the road at the time. Seconds before the pickup turned left, it abruptly shifted into the center lane and then again into the far-left lane. Based on our review of the record, we cannot conclude the district court was clearly wrong in finding the driver's sudden lane shifts and left turn violated the requirement in § 60-159(2) that drivers approach left turns from the far-left lane. In addition, we note that Meyer testified that he did not see a signal light for the lane changes or turn, which formed additional bases for the traffic stop, although the video revealed the driver's use of his arm to signal the turn. The district court did not err in finding that Meyer had probable cause to stop the pickup.

*(ii) Reasonable Suspicion to Search Pickup*

Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). But he or she "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. U.S.*, ___ U.S. ___, 135 S. Ct. 1609, 1615, 191 L. Ed. 2d 492 (2015). This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol pickup, and asking the driver about the purpose and destination of his or her travel. *Khalil, supra*. Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011).

The tolerable duration of a traffic stop is that which is reasonably necessary to address the mission of the stop and the ordinary inquiries incident thereto, and a drug-detecting dog sniff is not an ordinary incident of a traffic stop. See *State v. Ferguson*, 301 Neb. 697, 919 N.W.2d 863 (2018). Where a law enforcement officer has probable cause or reasonable suspicion to continue the detention after the initial mission of the stop is completed, the officer may conduct a drug-detecting dog sniff while the suspect is properly detained. See *id.* Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). Factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *Id.*

The State concedes that "the deployment of the drug dog delayed the end of the traffic stop by two or three minutes." Brief for appellee at 11. However, the driver's and Terry's behavior during the stop, along with the other information known and received by Meyer, gave Meyer sufficient reasonable suspicion to further detain the driver and Terry. Although under normal circumstances nervousness alone would not support a reasonable suspicion of illegal activity, the driver's excessive nervousness here supported Meyer's reasonable suspicion that the pickup may

- 5 -

contain narcotic drugs. Meyer had had recent contact with the driver because of another drug-related arrest, and the driver's behavior in this traffic stop was more pronounced than during that prior contact. Meyer observed that the driver could not stop shaking or keep still. The police records management system showed that both the driver and Terry had prior drug-related contacts. Further, the driver admitted to using illegal drugs within a few days of the traffic stop. Taken together, these factors gave Meyer sufficient reasonable suspicion to extend the traffic stop to allow for the drug detection dog's arrival. Once the dog alerted to the passenger side of the vehicle, Meyer had reasonable suspicion to search the pickup for narcotic drugs, as well as the driver, Terry, and the backpack.

As a result, we find no error in the district court's finding that the police search of the driver's pickup and Terry's backpack did not violate her right to be free from unreasonable searches and seizures.

(b) Miranda Rights

Terry also argues that the district court erred in failing to sustain her motion to suppress her statements given to Meyer. She asserts that the interaction with Meyer was a custodial interrogation and she was not advised of her *Miranda* rights, her statements were inadmissible. We disagree.

*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), adopted a set of prophylactic measures to protect suspects from modern custodial interrogation techniques. The safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *State v. DeJong*, 287 Neb. 864, 845 N.W.2d 858 (2014). *Miranda* warnings are required only when there has been such a restriction on a person's freedom as to render him or her in custody. See *State v. Landis*, 281 Neb. 139, 794 N.W.2d 151 (2011). A person is in custody for purposes of *Miranda* when there is a formal arrest or a restraint on his or her freedom of movement to the degree associated with such an arrest. *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). Persons temporarily detained pursuant to an investigatory traffic stop are not in "custody" for purposes of *Miranda*. *State v. Abu-Seriah*, 25 Neb. App. 462, 908 N.W.2d 86 (2018). When a person is detained pursuant to a traffic stop, there must be some further action or treatment by the police to render that person in custody and entitled to *Miranda* warnings. See *Khalil, supra*.

Terry has asserted no factors beyond her detention in a traffic stop that would render her in custody and entitled to *Miranda* warnings. Upon discovering the pill bottles in Terry's backpack, Meyer asked her only whether she had a prescription for the pills, which is not sufficient to convert her police encounter into a custodial interrogation. See *State v. Casillas*, 279 Neb. 820, 782 N.W.2d 882 (2010) (*Miranda* did not prevent admission of inculpatory statements made in response to preliminary questions during traffic stop). We conclude that the district court did not err in determining that Terry was not in custody when Meyer questioned her, and that Meyer was not required to advise her of her *Miranda* rights. Thus, the district court did not err in overruling her motion to suppress based on *Miranda*.

## 2. SENTENCES

Terry next assigns the district court erred in imposing excessive sentences for her convictions. We find this assignment also to be without merit.

A Class IV felony is punishable by a maximum sentence of 2 years' imprisonment and 12 months' postrelease supervision, a $10,000 fine or both, with no minimum sentence required. However, if imprisonment is imposed a minimum of 9 months' postrelease supervision is required. Neb. Rev. Stat. § 28-105 (Supp. 2017). Neb. Rev. Stat. § 29-2204.02 (Reissue 2016) further requires a court to impose a sentence of probation for a Class IV felony unless, among other things, the court finds that there are substantial and compelling reasons why the defendant cannot effectively and safely be supervised in the community.

Terry was sentenced to concurrent terms of 180 days in jail, followed by 12 months of postrelease supervision. Terry's sentences are within the statutory limit.

Terry nevertheless argues that because her previous convictions have all been for nonviolent crimes and because her conviction here did not cause or threaten serious harm, the district court abused its discretion in imposing a sentence of jail time as opposed to probation.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). Relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Tucker*, 301 Neb. 856, 920 N.W.2d 680 (2018). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *State v. Steele*, 300 Neb. 617, 915 N.W.2d 560 (2018).

The presentence investigation report (PSI) in this case shows that Terry, age 32, is single and has one dependent child. She has several convictions for alcohol- and drug-related crimes, including driving under the influence, possession of marijuana, and attempted possession of a controlled substance. Additionally, she has been convicted of unauthorized use of a financial transaction device, failure to restrain child, criminal trespass, failure to appear, and numerous traffic violations. On the Level of Service/Case Management Inventory, Terry scored overall in the high risk range to reoffend. Terry has not undergone drug or alcohol evaluation or treatment because she denies having a problem.

At the sentencing hearing, the district court indicated that it had reviewed the PSI and Terry's attorney's letter regarding sentencing. The court expressed its concern that Terry had never had a drug and alcohol evaluation and that given her history, she does not believe that she has a problem with drugs or alcohol. The court noted Terry's prior criminal history and found that ignoring these crimes would depreciate their seriousness and promote disrespect for the law. The court stated that if Terry had led a generally law-abiding life and not had prior difficulties of the

nature she has had, it might consider her for probation. Noting Terry's unwillingness to get an evaluation despite being provided a free voucher, the court expressed doubt that she would comply with an order of probation. Terry's history of substance abuse and her lack of responsibility led the court to conclude that there were substantial and compelling reasons not to place her on probation.

Our review of the record demonstrates that the district court properly considered and applied the necessary statutory sentencing factors. In addition, the district court properly applied § 29-2204.02(2) and did not abuse its discretion in concluding that substantial and compelling reasons show that Terry cannot effectively and safely be supervised in the community.

As a result, we find the district court did not abuse its discretion in imposing concurrent sentences of 180 days on Terry's convictions, followed by 12 months of postrelease supervision.

## VI. CONCLUSION

Having found no merit to Terry's arguments with respect to the Fourth and Fifth Amendments, we find no error in the district court's denial of his motion to suppress. Further, because the court properly applied the necessary sentencing factors, we find the court's sentence was not an abuse of discretion. We therefore affirm Terry's convictions and sentences.

AFFIRMED.