Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/30/2018 09:12 AM CST

STATE OF NEBRASKA, APPELLEE, V.
ALI E. KHALIL, APPELLANT.
___ N.W.2d ___

Filed January 16, 2018.    No. A-17-085.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment or the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment or Fifth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Investigative Stops: Motor Vehicles: Probable Cause.** A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle.

3. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants.

4. ____: ____: ____. An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

5. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** To expand the scope of a traffic stop and continue to detain the motorist, an officer must have a reasonable, articulable suspicion that a person in the vehicle is involved in criminal activity beyond that which initially justified the interference.

6. **Probable Cause: Words and Phrases.** Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause.

7. **Police Officers and Sheriffs: Probable Cause.** Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances.

8. **Probable Cause.** Reasonable suspicion exists on a case-by-case basis.

9. ____. Factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively.

10. **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered.

11. **Investigative Stops: Motor Vehicles: Probable Cause.** In determining whether a continued detention of a defendant following a stop for a traffic violation is reasonable, a court considers both the length of the continued detention and the investigative methods employed.

12. **Miranda Rights.** The safeguards provided by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.

13. ____. *Miranda* warnings are required only when there has been such a restriction on one's freedom as to render one in custody.

14. **Miranda Rights: Arrests: Words and Phrases.** A person is in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), when there is a formal arrest or a restraint on his or her freedom of movement to the degree associated with such an arrest.

15. **Miranda Rights: Investigative Stops: Motor Vehicles.** Persons temporarily detained pursuant to an investigatory traffic stop are not in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

16. **Miranda Rights: Police Officers and Sheriffs: Investigative Stops: Motor Vehicles.** When a person is detained pursuant to a traffic stop, there must be some further action or treatment by the police to render the driver in custody and entitled to *Miranda* warnings.

17. **Miranda Rights: Self-Incrimination: Right to Counsel.** The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent, and the safeguards include advisements of the right to remain silent and the right to have an attorney present at questioning.

18. ____: ____: ____. Under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), if the suspect in custody indicates that he or she wishes to remain silent or that he or she wants an attorney, the interrogation must cease.

19. **Miranda Rights: Right to Counsel.** In order to require cessation of custodial interrogation, the subject's invocation of the right to counsel must be unambiguous and unequivocal.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Steven B. Muslin, of Muslin & Sandberg, and Thomas J. Olsen, of Olsen Law Offices, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Pirtle, Riedmann, and Arterburn, Judges.

Riedmann, Judge.

## INTRODUCTION

Ali E. Khalil was convicted of delivery or possession with intent to deliver marijuana following the discovery of 128 pounds of marijuana in his vehicle during a traffic stop. On appeal, he claims that his motion to suppress should have been granted because of violations of his rights under the Fourth and Fifth Amendments. We find no merit to the arguments raised on appeal and therefore affirm.

## BACKGROUND

The events giving rise to this case, and the issues raised on appeal, are substantially intermingled with those in a companion case filed today in *State v. Abu-Serieh, post* p. 462, ___ N.W.2d ___ (2018). Khalil and Issa Abu-Serieh were driving

separate rental vehicles but traveling together on Interstate 80 when the relevant events occurred.

On January 25, 2015, Lancaster County Deputy Sheriff Jason Henkel was patrolling Interstate 80 near mile marker 397 when he observed a Nissan Altima that was following a semi-truck too closely. He observed another vehicle, a Ford Edge, following the Nissan too closely and believed the Nissan and Ford were traveling together based on "their driving habits." Henkel called for Deputy Sheriff Jason Mayo to assist him. Henkel performed a traffic stop on the Nissan, and Mayo stopped the Ford.

The driver of the Nissan, later identified as Khalil, provided his driver's license and a vehicle rental agreement when requested. While at the window of the Nissan, Henkel noticed a faint odor of what he believed to be raw marijuana, but he could not confirm it at that point due to strong winds. Henkel asked Khalil to accompany him to Henkel's patrol car in order to talk with him while Henkel prepared the warning ticket for following too closely. Khalil did so and sat in the front passenger seat. He was not in handcuffs and was not under arrest, but was detained for the traffic violation.

Henkel made general conversation with Khalil while preparing the warning ticket by asking questions about his travels. Khalil said that he had attended a convention in Salt Lake City, Utah, for the trucking company he owns and was trying to obtain additional business. Khalil said that he lives in the Chicago, Illinois, area. Henkel asked if Khalil was traveling with the driver of the Ford, and Khalil said yes, the driver of the Ford, Abu-Serieh, was his friend. Throughout the time Henkel and Khalil sat in Henkel's patrol car, Henkel exchanged communication with Mayo via the mobile data terminal in each of their patrol cars. Mayo told Henkel that Abu-Serieh said he was not traveling with Khalil. Khalil and Abu-Serieh provided additional inconsistent information, with Abu-Serieh reporting that he had attended a bachelor party in California and was returning home to Chicago,

while Khalil stated that Abu-Serieh lived in the Salt Lake City area.

After issuing the warning ticket to Khalil, Henkel asked if there were any guns, bombs, cocaine, heroin, or marijuana in the vehicle, and Khalil said no. Henkel then asked Khalil for permission to search the vehicle because he suspected that there was criminal activity afoot, and Khalil responded that "he wanted to be on his way." Henkel was suspicious based on several factors: the odor of raw marijuana coming from the vehicle, which he was unable to confirm; the business attire hanging in the window of the Nissan and a suitcase in the back seat; the vehicle had a "lived-in look," and it appeared that Khalil had slept in the vehicle; Khalil exhibited signs of nervousness, including shaking and trembling hands, labored breathing, and "a pulse [visible] in his stomach"; and the numerous air fresheners in the front and back of the Nissan. In addition, Khalil was driving a rental vehicle and traveling with a companion who drove a separate vehicle, but both vehicles were rented in Khalil's name, and when questioned, Khalil and the other driver provided inconsistent information.

Less than 3 minutes after issuing the warning ticket to Khalil, Henkel deployed his drug dog, which was in his patrol car, and the canine alerted and indicated to the odor of narcotics coming from the Nissan. Upon searching the vehicle, Henkel discovered 128 pounds of marijuana in the trunk. While at the scene of the traffic stop, Henkel handcuffed Khalil and read him his *Miranda* warnings. Henkel asked Khalil if he would be interested in participating in a controlled delivery of the marijuana, and Khalil indicated that "he'd have to talk to his attorney first." Henkel asked whether Khalil was requesting an attorney at that point, and Khalil responded that it "depends on the questions you ask me." Throughout further questioning later at the jail, Khalil admitted that he was receiving $7,000 to deliver the marijuana.

Khalil was ultimately charged with delivery or possession with intent to deliver marijuana. Prior to trial, he filed a

motion to suppress the statements he made and the results of the search of the Nissan. A suppression hearing was held, and the testimony revealed the information detailed above. The district court subsequently announced its findings from the bench. The court determined that there was probable cause for the traffic stop based on the traffic violation of following too closely. The court additionally found that Henkel had reasonable suspicion to detain Khalil in order to conduct a canine sniff and had probable cause to search the Nissan based on the alert and indication of the canine. Finally, the court concluded that Khalil did not unequivocally invoke his right to counsel and that therefore, his statements were admissible. The motion to suppress was therefore denied.

Thereafter, a stipulated bench trial was held. The evidence presented consisted of the video recordings of the traffic stops from Henkel's patrol car and Mayo's patrol car, law enforcement reports, and the transcript of the suppression hearing. The court ultimately found Khalil guilty of delivery or with possession with intent to deliver marijuana. He was sentenced to 18 to 36 months' incarceration. He now appeals to this court.

## ASSIGNMENT OF ERROR

Khalil assigns, summarized, that the district court erred in denying his motion to suppress.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment or the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), we apply a two-part standard of review. See, *State v. Bauldwin*, 283 Neb. 678, 811 N.W.2d 267 (2012); *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011). Regarding historical facts, we review the trial court's findings for clear error. *State v. Bauldwin, supra*; *State v. Nelson, supra*. But whether those facts trigger or violate Fourth Amendment or

Fifth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Bauldwin, supra*; *State v. Nelson, supra*.

## ANALYSIS

Khalil argues that the district court erred in denying his motion to suppress because of perceived violations of his rights under the Fourth and Fifth Amendments.

*Fourth Amendment.*

Khalil first argues that his motion to suppress should have been granted because his Fourth Amendment rights were violated when Henkel impermissibly extended the scope of the traffic stop beyond what was reasonable to issue the warning for the traffic violation.

[2] At the outset, we note that in his brief, despite several arguments to the contrary, Khalil acknowledges that the "evidence is unrebutted that the traffic stop was properly initiated by Deputy Henkel." Brief for appellant at 27. We agree. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Nelson, supra*. Here, Henkel explained how he determined that Khalil's vehicle was following another vehicle too closely in violation of Neb. Rev. Stat. § 60-6,140(1) (Reissue 2010). The fact that Khalil committed a traffic violation is not challenged on appeal, and thus, the initial stop of the Nissan was justified.

Khalil claims that any questions Henkel posed to him during the stop before the warning ticket was issued that were unrelated to the traffic violation "create[d] an unwarranted and nonconsensual expansion of the seizure from a routine traffic stop to a drug investigation." Brief for appellant at 31. We disagree.

[3,4] Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Nelson, supra*. This investigation may include asking the driver for an operator's license and registration,

requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id*. Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *Id*. An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009).

In the present case, the amount of time that elapsed between the time Henkel initiated the traffic stop of the Nissan until the time he issued the warning ticket was a total of approximately 10 minutes. While Khalil was seated in the passenger seat of the patrol car, Henkel asked him a variety of questions, such as where he had been, where he lived, and where he was going. During this time, Henkel was also communicating with Mayo, and the deputies were exchanging the information provided to them by Khalil and Abu-Serieh, discovering discrepancies in their responses. Khalil references this communication between deputies in his brief, but he provides no authority to support a finding that doing so was improper or unconstitutional, particularly when the exchange of communication did not extend the traffic stop beyond the length of time necessary to issue the warning ticket. Given the total length of time it took for Henkel to process Khalil's information and issue the warning ticket, approximately 10 minutes, we conclude that any questioning did not measurably extend the duration of the stop and was therefore permissible.

Khalil also argues that Henkel impermissibly extended the length of the traffic stop in order to conduct a canine sniff of the vehicle after issuing the warning ticket to him. We do not agree.

[5-10] To expand the scope of a traffic stop and continue to detain the motorist, an officer must have a reasonable,

articulable suspicion that a person in the vehicle is involved in criminal activity beyond that which initially justified the interference. See *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *Id*. Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances. *Id.* Reasonable suspicion exists on a case-by-case basis. *Id.* Factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *Id*. An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. *U.S. v. Murillo-Salgado*, 854 F.3d 407 (8th Cir. 2017).

In this case, Henkel suspected that there was criminal activity afoot based on several factors: the odor of raw marijuana coming from the vehicle, which he was unable to confirm; the business attire hanging in the window of the vehicle and a suitcase in the back seat; the "lived-in look" of the vehicle; Khalil's nervousness; and the numerous air fresheners in the vehicle. In addition, Khalil was driving a rental vehicle and traveling with a companion who drove a separate vehicle, and when questioned, Khalil and the other driver provided inconsistent information, with the other driver denying that he was even traveling with Khalil. Given the totality of the circumstances, Henkel had a reasonable suspicion to expand the scope of the traffic stop and continue to detain Khalil in order to perform a canine sniff of the vehicle.

[11] Khalil takes issue with Henkel's testimony that "as an interdiction officer, it was always his intention to deploy his dog." Brief for appellant at 33. Regardless of Henkel's thought process or motivation for doing so, we find that he had reasonable, articulable suspicion supporting extending

the stop in order to conduct a canine sniff of the vehicle. As such, this argument lacks merit. Having determined that reasonable suspicion existed to support continued detention, the next question is whether the detention was reasonable in the context of an investigatory stop. See *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006). We consider both the length of the continued detention and the investigative methods employed. *Id*.

Henkel had the canine with him in his vehicle, and the amount of time that elapsed from the time he issued the warning to Khalil until the time the canine was deployed was less than 3 minutes. In *State v. Voichahoske, supra*, the Supreme Court found that a 15-minute period of time from the conclusion of the traffic stop until arrival of a drug dog was not unreasonable. And the Supreme Court has previously determined that nearly an hour delay between the request of a canine unit and its arrival was not unreasonable. See *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). The record in the instant case shows no lack of diligence on Henkel's part nor any unreasonable delay. And because a canine sniff is not a search under the Fourth Amendment, using the drug dog during a lawful detention did not violate any constitutionally protected right. See *State v. Voichahoske, supra*. Accordingly, the length and method of detention in the present case were reasonable.

We note that Khalil relies upon *Rodriguez v. United States*, ___ U.S. ___, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015), when arguing that the traffic stop was impermissibly extended. Khalil acknowledges, however, that the question in *Rodriguez* was whether police may extend "an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." Brief for appellant at 34. Thus, because we found that reasonable suspicion existed to allow Henkel to extend the stop, *Rodriguez* would not change the outcome of our decision.

Finding no merit to any of Khalil's arguments with respect to the Fourth Amendment, we conclude that the district court properly denied his motion to suppress on those grounds.

*Fifth Amendment.*

Khalil argues that Henkel's question to him of whether he had any drugs "created a hazard of incrimination" and that he was compelled to answer the question or be penalized for asserting his right to refuse to answer. Brief for appellant at 40. He therefore concludes that Henkel was required to read him his *Miranda* rights prior to posing the question. Khalil also argues that he later invoked his right to counsel, but Henkel continued to question him in violation of his Fifth Amendment rights. We disagree.

[12-14] We reject Khalil's argument that Henkel was required to read him his *Miranda* rights because Khalil was not in custody. The safeguards provided by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *State v. Landis*, 281 Neb. 139, 794 N.W.2d 151 (2011). *Miranda* warnings are required only when there has been such a restriction on one's freedom as to render one in custody. *Id*. A person is in custody for purposes of *Miranda* when there is a formal arrest or a restraint on his or her freedom of movement to the degree associated with such an arrest. See *State v. Landis, supra*.

[15,16] Persons temporarily detained pursuant to an investigatory traffic stop are not in custody for purposes of *Miranda*. *State v. Landis, supra*. When a person is detained pursuant to a traffic stop, there must be some further action or treatment by the police to render the driver in custody and entitled to *Miranda* warnings. *Id*. In *State v. Landis*, the Supreme Court observed that the defendant's presence in the trooper's cruiser did not raise the interaction to the extent analogous to an arrest, because there was no indication that the trooper used

force or threats to get the defendant to enter the cruiser or to remain there.

Likewise here, Khalil was temporarily detained pursuant to a traffic stop and voluntarily entered Henkel's patrol car while Henkel prepared the warning ticket. Thus, some further action or treatment by the deputy that would raise Khalil's detention to an extent analogous to an arrest was required. Because there was none, Khalil was not "in custody," and thus, *Miranda* warnings were not required before he could be questioned. Having determined that Khalil was not in custody for *Miranda* purposes, we need not address whether he was subjected to an interrogation during that time. Accordingly, any statements he made to Henkel while seated in the patrol car were not obtained in violation of his Fifth Amendment rights and were admissible. As such, the motion to suppress was properly denied on these grounds.

Khalil further asserts that he invoked his right to counsel and that Henkel unconstitutionally continued to question him after he had done so.

[17,18] The U.S. Supreme Court adopted a set of prophylactic measures to protect suspects from modern custodial interrogation techniques. *Miranda v. Arizona, supra*. See, also, *State v. DeJong*, 287 Neb. 864, 845 N.W.2d 858 (2014). The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *State v. DeJong, supra*. The safeguards include the familiar *Miranda* advisements of the right to remain silent and the right to have an attorney present at questioning. *Id*. If the suspect in custody indicates that he or she wishes to remain silent or that he or she wants an attorney, the interrogation must cease. *Id*.

[19] In order to require cessation of custodial interrogation, the subject's invocation of the right to counsel must be unambiguous and unequivocal. *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009). "Statements such as '"[m]aybe I should talk to a lawyer"' or '"I probably should have an

attorney"' do not meet this standard." *Id*. at 959, 774 N.W.2d at 744-45.

In the case at hand, Khalil never unambiguously and unequivocally invoked his right to counsel. When discussing whether Khalil would be interested in assisting law enforcement by participating in a controlled delivery of marijuana, Khalil remarked that "he'd have to talk to his attorney first." Henkel then asked whether Khalil was requesting an attorney at that point, and Khalil responded that it "depends on the questions you ask me." We cannot find that this language constitutes an unambiguous and unequivocal request for counsel, particularly when Khalil's reference to speaking with his attorney was made in the context of agreeing to participate in a controlled delivery rather than discussing specifics about the events of this case. Therefore, law enforcement's continued questioning of Khalil did not violate his Fifth Amendment rights and the district court did not err in denying the motion to suppress.

## CONCLUSION

Having found no merit to Khalil's arguments with respect to the Fourth and Fifth Amendments, we find no error in the district court's denial of his motion to suppress. We therefore affirm his conviction and sentence.

Affirmed.