IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GEORGES

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ANDERSON GEORGES, APPELLANT.

Filed June 23, 2020.    No. A-19-955.

Appeal from the District Court for Hall County: JOHN H. MARSH, Judge. Affirmed.

Robert W. Alexander, Deputy Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

Following a bench trial, Anderson Georges was convicted of possession of marijuana with the intent to distribute. The Hall County District Court sentenced Georges to a 4-year term of probation subject to certain conditions. In this direct appeal, Georges claims that the district court erred in finding that his vehicle was lawfully stopped, that the trooper had reasonable and articulable suspicion to extend the traffic stop, and that the trooper's contact with Georges amounted to one seizure instead of two separate seizures. For the reasons set forth herein, we affirm.

STATEMENT OF FACTS

In January 2018, a Nebraska State Patrol trooper received information from dispatch regarding a vehicle with Florida license plates that was speeding while traveling eastbound on Interstate 80. As the trooper was driving, he observed a vehicle traveling eastbound on Interstate

80 matching the description dispatch had given and attempted to get a radar clock on the vehicle but was unable to do so due to the distance and traffic. The trooper noted the vehicle was speeding because the vehicle remained in the passing lane and was in front of the trooper for some time before the trooper could catch up to the vehicle. The trooper also observed the vehicle traveling approximately 20 feet behind another vehicle and initiated a traffic stop for following too closely.

As the trooper approached the passenger side of the vehicle he noticed "a pizza box in the rear seat and air fresheners hanging from the rear-view mirror," which caught his attention because he presumed the vehicle was a rental vehicle. The trooper expounded that the pizza box led him to believe "they're not stopping to eat, they're taking food with them, trying to get from Point A to Point B quickly." The trooper also explained that "[r]entals are not the property of the person usually driving them, so to . . . spend money and personalize a vehicle . . . catches my attention" and because smoking and pets are not allowed in a rental vehicle, air fresheners are not needed unless the occupants are trying to cover up smells.

After the trooper informed the driver, Georges, and the passenger why he stopped the vehicle, he requested their licenses and registration information, which Georges and the passenger provided. The trooper's presumption that the vehicle was a rental vehicle was confirmed by the rental agreement provided to him. As the trooper interacted with Georges and the passenger, he could smell a strong odor of perfume and saw a perfume bottle in plain view in the front center console of the vehicle. The presence of the perfume bottle attracted the trooper's attention because, in his experience, "the only time that I've seen two males having a bottle of perfume is when they're trying to cover up something."

Once the trooper obtained the driver licenses and rental agreement, he asked Georges to sit in the passenger seat of the patrol car. The trooper ran checks on both Georges and the passenger which showed that the passenger had a criminal history involving drugs. While in the patrol car, the trooper also engaged in a conversation with Georges asking a series of questions about travel plans and school. Georges was initially unsure where he was traveling from but eventually explained the passenger had loaded the address of the location on a GPS system. As the conversation continued, Georges stated they left Florida on Tuesday or Thursday, about 5 days prior to the traffic stop, and visited marijuana dispensaries in Colorado and the passenger's relatives. At one point, when discussing college plans, Georges told the trooper that he was considering enrolling in college, perhaps "USF," that his sister attends "USF," and the trooper asked if that was the University of Southern Florida to which Georges replied "no." Georges identified the college mascot as the Bulls, which the trooper noted is the University of Southern Florida's mascot. His conversation with Georges further raised the trooper's suspicions that there was illegal contraband in the vehicle.

Based upon these suspicions, the trooper continued speaking with Georges and asked if he could search Georges' belongings, which Georges declined. The trooper estimated that 10 to 15 minutes elapsed from the beginning of the traffic stop to the time he inquired about searching Georges' belongings.

While the trooper printed off a traffic citation, he returned to the vehicle and spoke with the passenger about their trip. The passenger stated they had been visiting friends but was vague about where they had been. The trooper again returned to his patrol car, issued the citation to Georges, and suggested that the passenger drive because the rental agreement was in the

passenger's name. The trooper and Georges then returned to the passenger side of the rental vehicle, and when he reached the door with Georges next to him, the trooper stated, "you guys are free to go," but in the same sentence also asked, "But do you guys have any marijuana in the vehicle?" to which the passenger responded in the negative.

The trooper asked the passenger, who was exiting the passenger side of the vehicle, if he could search the vehicle. The passenger, who was appearing nervous and more animated, declined. The passenger attempted to move past the trooper but the trooper placed his arm on the passenger's back and moved him back so that both the passenger and Georges remained in front of him on the passenger side of the vehicle. At that point, another trooper approached the three of them. The original trooper detained Georges and the passenger and requested a drug detection dog, which arrived approximately 10 minutes later. Once on the scene, the drug detection dog sniffed the vehicle and alerted to indicate that the vehicle contained drugs, prompting a search of the vehicle. The search revealed THC products in the passenger compartment and bulk bags of marijuana in the trunk, resulting in the discovery of 13 pounds of marijuana.

In February 2018, Georges was charged with possession of marijuana with intent to distribute, a Class IIA Felony, and no drug tax stamp, a Class IV Felony. See Neb. Rev. Stat. §§ 28-416(1)(a) (Cum. Supp. 2018) and 77-4309 (Reissue 2009).

### MOTION TO SUPPRESS

Georges moved to suppress evidence alleging that the traffic stop was made without probable cause, that the stop was extended without reasonable suspicion and articulable suspicion, that Georges was improperly seized without probable cause or a warrant, and that the search was conducted without probable cause or a warrant.

The court found the trooper did have probable cause to stop the vehicle based on the trooper's determination of speed and visual observation of the vehicle following too closely to another vehicle. The court also found the trooper had reasonable suspicion that criminal activity was afoot based on the totality of a number of factors, which included: (1) Georges' statement that he had visited Colorado drug dispensaries; (2) the presence of items like "perfume, air fresheners, [and] pizza boxes masking the odor of marijuana;" and (3) the passenger's record of drug convictions. Ultimately, the court denied Georges' motion to suppress.

### TRIAL

At a stipulated bench trial held in July 2019, the State only proceeded on the charge for possession of marijuana with the intent to distribute and the stipulated facts were materially similar to those described above. Georges renewed his objection to the evidence obtained after the traffic stop and the traffic stop being extended, which the court noted. The court found Georges guilty of the charged offense and sentenced him to a 4-year term of probation with certain conditions.

### ASSIGNMENTS OF ERROR

Georges argues that the court erred in (1) finding his vehicle was lawfully stopped, (2) finding the trooper had reasonable and articulable suspicion to extend the traffic stop, and (3) implicitly finding the trooper's contact with Georges amounted to one seizure instead of two separate seizures.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019). Regarding historical facts, we review the trial court's findings for clear error. *Id.* But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Shiffermiller, supra*. The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *Id*.

When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from trial and from the hearings on the motion to suppress. *State v. Hartzell*, 304 Neb. 82, 933 N.W.2d 441 (2019).

ANALYSIS

INITIAL STOP

Georges first assigns that the district court erred in failing to grant his motion to suppress evidence for the reason that his vehicle was not lawfully stopped.

A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017). In reviewing a challenge to the legality of an automobile stop, the question is not whether the officer issued a citation for a traffic violation or whether the State ultimately proved the violation; instead, a stop of a vehicle is objectively reasonable when the police officer has probable cause to believe that a traffic violation has occurred. *Id*.

Neb. Rev. Stat. § 60-6,140(1) (Reissue 2010) provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, and such driver shall have due regard for the speed of such vehicles and the traffic upon and the condition of the roadway."

Taken together, following a motor vehicle too closely is a traffic violation and the trooper had the legal right to stop Georges if he had probable cause to believe Georges committed the traffic violation of following too closely. Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances. *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018).

Here, probable cause justifies the stop if the record indicates that, applying the objective standard of reasonableness, the trooper justifiably had reason to believe Georges was following another vehicle too closely. The record reflects that the trooper, who was attempting to catch up to Georges to follow up on a report that Georges was speeding, visually observed him following too closely to a red vehicle. The police cruiser video captured the exchange when the trooper accused Georges of following the red vehicle too closely. After the trooper made the accusation, Georges did not deny he was following the vehicle too closely, but argued what the trooper witnessed had occurred after the red vehicle cut Georges' vehicle off. In response, the trooper denied seeing the red vehicle cut off Georges and stated he observed Georges positioning for some length of time. In short, the issue of whether Georges was following too closely became a

credibility determination of whether Georges' positioning was a product of being cut off by the vehicle in front of him. But having acknowledged the location of the vehicles in relation to each other, Georges' argument appears to be centered more on whether the facts were sufficient to convict Georges of the alleged traffic offense. As the Nebraska Supreme Court noted in *State v. Perry*, 292 Neb. 708, 723, 874 N.W.2d 36, 47 (2016), "probable cause does not require evidence sufficient to convict--only that which would lead to a reasonable inference of guilt." We hold that, based upon the record in this case, the district court did not err in finding that the trooper had probable cause to pull over Georges' vehicle for committing a traffic violation, i.e., following too closely. This assignment of error fails.

EXTENSION OF INITIAL STOP

Georges next assigns that the district court erred in denying his motion to suppress because the original stop was unlawfully extended without reasonable suspicion.

Generally speaking, the Nebraska Supreme Court has recognized that "'"[p]olice can constitutionally stop and briefly detain a person for investigative purposes if the police have a reasonable suspicion, supported by articulable facts, that criminal activity exists, even if probable cause is lacking under the [F]ourth [A]mendment."'" *State v. Barbeau*, 301 Neb. 293, 301, 917 N.W.2d 913, 921 (2018), quoting *State v. Childs*, 242 Neb. 426, 495 N.W.2d 475 (1993), and *State v. Staten*, 238 Neb. 13, 469 N.W.2d 112 (1991).

This case involves a traffic stop which grew into an arrest for possession of drugs. We recently had occasion to summarize the law in similar circumstances in *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). In *Khalil*, the defendant similarly argued that his motion to suppress should have been granted because his Fourth Amendment rights were violated when the police officer impermissibly extended the scope of the traffic stop beyond what was reasonable to issue a warning for a traffic violation. In fashioning the legal framework for an extended investigation, we held:

> Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Nelson*, [282 Neb. 767, 807 N.W.2d 769 (2011)]. This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id*. Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *Id*. An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop. *Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009).

*State v. Khalil*, 25 Neb. App. at 455-56, 908 N.W.2d at 103-04.

We first note that the record indicates that the trooper appropriately conducted his initial investigation consistent with this rule of law. After stopping Georges' vehicle, he asked and received the licenses of both Georges and his passenger, made inquiries of both men about the purpose and destination of the travel, and ran a computer check on both to determine whether

outstanding warrants existed on either Georges or the passenger. After conducting this initial investigation, which the trooper estimated took about 15 minutes to complete, the trooper issued a citation to Georges and advised Georges that his passenger should be driving because the passenger, and not Georges, was named in the rental agreement on the vehicle with no secondary drivers listed. Like in *Kahlil*, we conclude in this case that there was nothing involved in the initial investigation which measurably extended the duration of the initial stop and that the trooper's investigation was reasonably related in scope to the circumstances that justified the traffic stop.

But Georges argues that the initial stop was then unjustifiably expanded. In *Khalid*, this court held:

> To expand the scope of a traffic stop and continue to detain the motorist, an officer must have a reasonable, articulable suspicion that a person in the vehicle is involved in criminal activity beyond that which initially justified the interference. See *State v. Nelson*, 282 Neb. 767, 807 N.W.2d 769 (2011). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *Id*. Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances. *Id.* Reasonable suspicion exists on a case-by-case basis. *Id.* Factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *Id*. An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. *U.S. v. Murillo-Salgado*, 854 F.3d 407 (8th Cir. 2017).

25 Neb. App. at 456-57, 908 N.W.2d at 104.

Here, during his initial investigation in connection with his traffic stop, the trooper noticed the empty pizza box in the vehicle, the air freshener in the rental vehicle, the perfume bottle and aroma of perfume near the front compartment, the inconsistent and evasive stories of Georges and the passenger regarding the nature of their trip and who they were visiting, Georges' admission to stopping in Colorado at marijuana dispensaries, the passenger's drug-related history obtained when the trooper ran the computer check, and the passenger's nervousness when the trooper asked whether he could search the vehicle. In short, this record demonstrates how the trooper's suspicion of criminal activity reasonably grew over the course of the traffic stop as the circumstances unfolded. And although Georges attempts to cite to cases where perhaps one or more of the factors contained in this record were found independently not to constitute a reasonable articulable suspicion for continued detention, none of those cases involve all of the factors present here. We hold that even though one or more of the factors cited above may be consistent with innocent activities, when considered collectively, they amounted to reasonable suspicion here which justified retaining Georges while the trooper called for a drug detection dog who ultimately alerted to the presence of drugs in the vehicle. The district court did not err in overruling Georges' motion to suppress on the bases that the trooper unlawfully extended Georges' detention without reasonable suspicion. This assignment of error fails.

Georges finally argues that the district court erred in overruling his motion to suppress because the district court erred in finding the traffic stop did not conclude when the trooper issued a citation and that reasonable suspicion and probable cause did not exist to support a second detention.

Here, Georges argues that, once the trooper concluded his initial investigation and handed him the citation, the initial seizure of Georges associated with his traffic stop was complete. He then argues:

> All of the facts that [the trooper] alleged gave him reasonable suspicion to extend the traffic stop were observed before [the trooper] concluded the traffic stop. Since [the trooper] told Georges and [the passenger] they were free to go multiple times, [the trooper] ended the initial stop, meaning his belief [that] criminal activity was afoot must have been dispelled. If [the trooper] still believed that a crime was being committed, why would he terminate the investigatory stop? Why would [the trooper] release Mr. Georges so that he could return to [the rental vehicle] and leave? [The trooper] ended the seizure because he knew that his belief that there was marijuana in the [rental vehicle] was nothing more than a hunch.
>
> No new facts were observed between the time [Georges] was released from the traffic stop and the time [Georges] was seized a second time, but for [the passenger]'s . . . nervousness. Therefore, there were no new observations that would indicate to [the trooper] that criminal activity was afoot that he had not already observed at the time he decided to end the traffic stop. Thus, there was no basis to reseize Mr. Georges and [the passenger]. To hold otherwise would allow law enforcement to detain a person repeatedly, without any new information, after an initial investigatory stop dispelled the officer's suspicions.

Brief for appellant at 28-29.

Georges cites to *State v. Hartzell*, 304 Neb. 82, 933 N.W.2d 441 (2019), as it relates to the concept of whether a traffic stop terminated and de-escalated to a voluntary police-citizen encounter. Although *Hartzell* speaks to that analysis, it does not provide that such de-escalation results in a forfeiture of information discovered during the initial seizure as that might related to a subsequent investigation or seizure.

Assuming without deciding that a termination of the initial seizure of Georges would have some relevance here, we first look to see whether the initial seizure was in fact terminated. In making that determination, we note the Nebraska Supreme court's analysis in *Hartzell* wherein it held:

> Hartzell relies upon *State v. Hansen*[, 63 P3.d 650 (Utah 2002),] for a similar factual scenario. The officer conducted a traffic stop of the defendant's vehicle for an improper lane change and uninsured vehicle. When the officer returned to the defendant, a second officer arrived and activated his patrol vehicle's lights. The officer gave the defendant a verbal warning for being uninsured but did not give a warning about the improper lane change. Once the officer returned the defendant's documents, he asked whether there was

any contraband in the vehicle. The defendant denied. The officer then asked for consent to search the vehicle, and the defendant consented.

In *Hansen*, the Utah Supreme Court reasoned that there was no evidence of de-escalation. It considered the factors concerning whether a seizure has occurred. It discussed that because there were no factors demonstrating a coercive show of authority in the initial stop, "a reasonable person would not be able to discern that a seizure had de-escalated to a consensual encounter due to the absence of such factors at the time of additional questioning." It reasoned that when the second officer arrived with his vehicle's lights flashing, a reasonable person may believe that the encounter was escalating rather than de-escalating. It discussed that when the officer returned the defendant's documents and questioned him about contraband, the officer did not address the improper lane change, tell him he did not have to answer, or tell him he was free to leave. Under the totality of the circumstances, the court concluded that the detention did not de-escalate and that therefore, the officer exceeded the scope of the stop without reasonable suspicion.

Here, the facts differ significantly. Based upon the record before us, VanWinkle completed the traffic stop. VanWinkle returned Hartzell's documents and told her to "'have a good night and to drive careful[ly].'" She then walked away from the encounter. After this exchange, a reasonable person would believe that he or she was free to leave. This was a definitive end to the seizure.

*State v. Hartzell*, 304 Neb. 82, 91-92, 933 N.W.2d 441, 449 (2019).

The instant case presents as a hybrid between *Hansen* and *Hartzell*. Like *Hansen*, the trooper provided a warning governing the traffic offense and returned documents and then proceeded to ask additional questions about contraband. Like *Hartzell*, the trooper does appear to then tell Georges he can go, but in the same sentence, asks for permission to search the vehicle for contraband. More specifically, this conversation takes place while Georges is outside of the passenger door of the rental vehicle while the passenger is exiting the passenger side presumably to switch to the driver's side at the trooper's request. While the passenger is exiting the vehicle, the trooper speaks the sentence which includes the request to search the vehicle. When the passenger appears to try to move past the trooper, the trooper guides him back with his arm so that both men remain in front of him. In short, although the trooper spoke words to the effect that the men were free to go, his final words in the same sentence and actions demonstrate that he was not de-escalating the encounter. We hold that even though the trooper issued Georges a citation while Georges sat in his patrol car and used words to the effect that Georges could go, the trooper's other words and conduct objectively demonstrated that Georges and the passenger were not free to leave and that the detention never de-escalated. Accordingly, we find a reasonable person under this record presented here would not have believed the scope of the seizure had ended, and, as we discussed in the last section of this opinion, there was reasonable articulable suspicion on the trooper's part to extend his investigation which led to the proper warrantless search and discovery of drugs present in the vehicle.

## CONCLUSION

Having considered and rejected Georges' assigned errors, we affirm Georges' conviction and sentence.

AFFIRMED.