IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. LANG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SCOTT E. LANG, APPELLANT.

Filed February 9, 2021.    No. A-20-472.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge. Affirmed.

John D. Icenogle, of Bruner, Frank & Schumacher, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Following a jury trial, Scott E. Lang was convicted of possession of a controlled substance (methamphetamine). The district court for Buffalo County imposed a sentence of probation. Lang appeals, alleging that the district court erred in denying his motion to suppress and his motion for new trial. Lang also alleges that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

## BACKGROUND

On August 14, 2019, the State filed an information in the district court alleging that Lang knowingly or intentionally possessed methamphetamine in violation of Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2018), a Class IV felony. The charge in this case arose from a routine traffic stop conducted by a trooper with the Nebraska State Patrol (NSP). Lang filed a pretrial

- 1 -

motion to suppress evidence on October 25, 2019, alleging that his Fourth Amendment rights had been violated.

*Motion to Suppress.*

At the hearing on Lang's motion to suppress, the State presented the testimony of Trooper Nathan Avery with NSP. Avery testified that he had been employed by NSP for 21 years and that he had received specialized training and education in the detection and interdiction of controlled substances. Avery estimated that during his career, he had made over 1,000 arrests involving drivers who were in possession of controlled substances.

Avery testified that while he was on routine patrol in July 2019, he received a call from dispatch to be on the lookout for "a white GMC SUV." According to dispatch, a citizen had observed the white GMC to be driving erratically, "all over the road" and on the shoulder of the highway. Avery located the vehicle on the highway, and he saw the white SUV drive on the shoulder of the interstate, which is a violation of Nebraska's traffic laws. Avery initiated a traffic stop and made contact with the driver of the vehicle. He stated that the driver stated "I'm sorry," which he found to be unusual. At the hearing, Avery identified Lang as the driver. Avery testified that a records check on the license plate of Lang's vehicle showed that the registration had expired.

Avery testified that he asked Lang to exit his vehicle and sit in the front of the patrol unit while he finished the traffic stop investigation. He testified that Lang "was hesitant" to sit in the passenger seat. Avery testified that he observed Lang to have a "haggard" appearance, by which he meant that Lang had a "[d]rawn face, dark underneath his eyes" and that it looked like "things had been going rough for [Lang]." Avery and Lang then engaged in a "non-investigatory" conversation, during which Lang stated that he was "pretty tired." Avery testified that he observed Lang to have "marks, scars, and injection sites" on his wrist and the inside of his elbow. He testified that although the observation of injection sites was not always indicative of the use of controlled substances, it raised his suspicions.

Avery further testified that "Lang displayed signs of a CNS stimulant user who's on the downside." Avery explained that when a person uses drugs such as methamphetamine or cocaine, the human body tries to maintain a "homeostasis." Avery testified that when the effect of the stimulant wears off, a person becomes "lethargic." He testified that a haggard appearance such as Lang's was consistent with "habitual drug use." Avery further testified that he observed Lang to display "cyclic behavior," meaning that Lang's demeanor cycled between cooperative and uncooperative. He testified that all of these factors raised his suspicions that Lang might be involved in drug-related criminal activity.

While Avery was conversing with Lang in the front of his patrol cruiser, Avery received information from dispatch that Lang had a criminal history involving controlled substances. Avery issued Lang a citation for an expired vehicle registration, but he testified that at that point, Lang was not free to leave the scene, because Avery had a reasonable suspicion that there were controlled substances in Lang's vehicle. He testified that this reasonable suspicion was based on all of the details he had observed, as well as his training and experience as a law enforcement officer.

Avery asked Lang for consent to search Lang's vehicle, which was denied. Avery then advised Lang that he was being detained while a canine unit was deployed. The canine unit arrived

at the scene and conducted an exterior sniff of Lang's vehicle. The canine alerted and indicated that controlled substances were present inside Lang's SUV. Avery testified that based on the results of the canine sniff, he conducted a search of Lang's vehicle. He testified that he located marijuana beneath the seat and a methamphetamine pipe in a bag on the passenger's seat.

Avery testified that after he found controlled substances and drug paraphernalia inside of Lang's vehicle, he conducted a search of Lang's person. Avery testified that he located approximately half a gram of methamphetamine in Lang's pocket. Avery then arrested Lang and transported him to the detention center. Avery testified that between the time he initiated the traffic stop and the time he searched Lang's person, approximately 45 minutes had elapsed.

When asked on cross-examination whether he had knowledge that Lang was a hemophiliac, Avery testified that the question "[rang] a bell." Avery agreed that Lang had told him he was tired after working all day. Avery admitted that he could not recall the date of Lang's most recent drug conviction. He admitted that he did not conduct a DUI investigation at any point during the traffic stop.

No further evidence was presented at the suppression hearing. The district court ruled from the bench, finding that Avery's initial traffic stop of Lang was valid and that Avery had reasonable suspicion to extend the stop for a canine sniff search. For these reasons, the district court overruled Lang's motion to suppress. The court entered a journal entry reflecting this ruling.

*Jury Trial and Sentencing.*

A jury trial was held on February 3, 2020. Prior to opening arguments, Lang renewed his motion to suppress. The district court overruled the motion and granted Lang a continuing objection to the admission of evidence stemming from the traffic stop.

The State first called Avery to testify. Avery's testimony at trial was consistent with his testimony at the suppression hearing. The State also presented the testimony of the handler of the police canine that conducted the sniff search of Lang's vehicle. A forensic scientist with the NSP Crime Laboratory testified that the substance found in Lang's pocket tested positive for methamphetamine.

At the close of the State's case, Lang made a motion for a directed verdict, which the district court overruled.

Lang testified on his own behalf. Lang testified that at the time Avery initiated the traffic stop, he was driving home after work. He testified that he told Avery "I'm sorry" because he was having a difficult time staying awake while driving. Lang testified that he had stated to Avery that he was the only individual who had access to the SUV. He testified that he could not "really say" whether the bag which contained the methamphetamine pipe belonged to him or not. Lang testified that he had been "shocked" when the bag of methamphetamine had been found in his pants pocket. On cross-examination, Lang admitted that the pair of pants he was wearing at the traffic stop belonged to him and that he had taken them from his closet that morning.

After Lang's testimony, the case was submitted to the jury. The jury returned a verdict of guilty on the charge of possession of a controlled substance (methamphetamine). The court accepted the verdict and scheduled sentencing.

The sentencing hearing was held on May 28, 2020. Prior to sentencing, Lang's counsel made an oral motion to withdraw, and Lang requested that new counsel be appointed to him. After

questioning by the court, Lang indicated that he wished to proceed at the sentencing hearing with the benefit of his trial counsel's representation. The court overruled the oral motion to withdraw. Lang also attempted to submit to the court a motion for new trial, which had not yet been filed or set for a hearing. The district court determined Lang's motion was premature and continued with sentencing. The court sentenced Lang to 2 years of probation, with a sentence of 90 days of jail time as a condition of that probation.

*Motion for New Trial.*

After sentencing, Lang filed his motion for new trial. His counsel also filed a motion to withdraw. At a hearing, the court granted the motion to withdraw. Prior to exiting the courtroom, Lang's trial counsel explained that the motion for new trial was based on the discovery that a modified version of a police report, which had been included in the presentence investigation (PSI), had not been available to the defense prior to trial. However, trial counsel admitted that even though she had not seen a physical copy of the report, the contents of the report had been adduced at the suppression hearing and at trial via Avery's testimony.

The district court appointed new counsel to represent Lang, and a hearing was held on Lang's motion for new trial on June 26, 2020. Lang's motion requested a new trial pursuant to Neb. Rev. Stat. §§ 29-2101(1), (5), and (7) (Reissue 2016). However, at the hearing Lang's counsel admitted that because the motion had not been filed within 10 days after the jury's verdict was rendered, the pleadings under §§ 29-2101(1) and (7) were untimely. See Neb. Rev. Stat. § 29-2103(3) (Reissue 2016). The hearing thus proceeded on the sole basis that Lang was entitled to a new trial pursuant to § 29-2101(5), or "newly discovered evidence."

In support of his motion for new trial, Lang offered exhibits 7 and 8 into evidence. Both exhibits were copies of a police report drafted by Avery. Exhibit 7 had last been modified on August 7, 2019, at 10:44 a.m., whereas exhibit 8 reflected that it had been last modified approximately 8 hours later, at 6:12 p.m. on August 7. The two police reports were identical, except that exhibit 8 had three additional sentences included in the third paragraph. These additional sentences stated that Avery observed Lang to display "signs of a CNS stimulant user who was on the down side" and to display "cyclic behavior."

Lang testified at the hearing that he had not seen a copy of Avery's modified police report until he reviewed the contents of the PSI prior to sentencing. On cross-examination, Lang agreed that he had been present at the hearing on his pretrial motion to suppress, as had his trial counsel. When asked if he recalled that Avery had testified both that Lang displayed signs of being a CNS stimulant user and cyclic behavior, Lang stated that he did not remember Avery's testimony.

In a written order, the district court overruled Lang's motion for new trial. The court found that the information in exhibit 8 was not newly discovered evidence because it had been included in Avery's testimony at the suppression hearing. The court found that Lang had attended the suppression hearing with counsel and that he had been given an opportunity to cross-examine the State's witness. The court concluded that "this evidence is not newly discovered and was known to all parties and the Court at the time of the suppression hearing."

Lang now appeals his conviction and sentence.

## ASSIGNMENTS OF ERROR

Lang assigns that the district court erred in (1) overruling his motion to suppress and (2) overruling his motion for new trial. Lang also assigns (3) that his trial counsel provided ineffective assistance of counsel by failing to provide Lang with discovery materials and to adequately prepare him prior to the hearing on his motion to suppress.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Andera*, 307 Neb. 686, 950 N.W.2d 102 (2020). Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Andera, supra*.

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## ANALYSIS

*Motion to Suppress.*

Lang assigns that the district court erred in overruling his motion to suppress. He argues that Avery did not have reasonable suspicion to extend the scope of the initial traffic stop. He argues that the specific factors in Avery's testimony, such as Lang's criminal history, Lang's statements while in the patrol cruiser, and Lang's demeanor and appearance during the traffic stop, were all insufficient to justify continued detention.

To begin with, we note that on appeal, Lang does not argue that the initial traffic stop was unlawful, not does he argue that the searches of his vehicle or person violated his constitutional rights. Accordingly, we consider only whether there existed reasonable suspicion to extend the scope of the initial traffic stop in order to conduct a canine sniff of the exterior of Lang's vehicle.

Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id.* Also, the officer may run a

computer check to determine whether the vehicle involved in the stop has been stolen and whether there are any outstanding warrants for any of its occupants. *Id.*

Here, the evidence showed that Avery received information that a white GMC SUV was driving "all over the road" and was dispatched to look out for the vehicle. After locating Lang's vehicle and observing a traffic violation, Avery initiated a traffic stop. Avery requested that Lang sit in his patrol cruiser while he conducted an investigation related to the traffic stop. Once inside the cruiser, Avery observed Lang to have a haggard appearance and saw injection sites on Lang's arms and wrists. Avery further observed that Lang displayed "cyclic behavior," meaning that Lang's demeanor cycled between cooperative and uncooperative. Avery also learned from dispatch that Lang had a history of drug-related criminal convictions. We determine that Avery's conduct while sitting with Lang in the front of the cruiser was reasonably related in scope to the circumstances that justified the traffic stop. There was no violation of Lang's rights at this juncture.

This court has held that to expand the scope of a traffic stop and continue to detain the motorist, an officer must have a reasonable, articulable suspicion that a person in the vehicle is involved in criminal activity beyond that which initially justified the interference. *State v. Khalil*, 25 Neb. App. 449, 908 N.W.2d 97 (2018). Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *Id.* Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances. *Id.* Reasonable suspicion exists on a case-by-case basis. *Id.* Factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *Id.* An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. *Id.* The "totality of the circumstances" includes all of the officer's objective observations and considerations, as well as the suspicion drawn by a trained and experienced police officer by inference and deduction. *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019).

In this case, Avery testified that he suspected Lang was involved in criminal activity based on several factors: Lang's haggard appearance; the presence of injection sites on Lang's arm; Lang's demeanor during the conversation inside the patrol cruiser; and the knowledge that Lang had a criminal history involving controlled substances. He further testified that based on his training and experience, which included over two decades as a police officer and over 1,000 arrests of drivers in possession of controlled substances, the totality of the circumstances was consistent with an individual who abused controlled substances.

Lang argues that Avery's suspicions were unreasonable because there was some evidence that Lang's haggard appearance and injection sites were unrelated to illegal activity, i.e., he was tired after getting off work and may have told Avery he was a hemophiliac. However, a determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). The inquiry is not whether some circumstances may be susceptible of innocent explanation, but whether, taken together, they suffice to form a particularized and objective basis for the officer to suspect a crime is occurring, or is about to occur. *Id.* Based on the totality of the circumstances, we determine that Avery had a reasonable suspicion to expand the scope of the traffic stop and detain Lang long enough to conduct a canine sniff of his vehicle.

Having determined that reasonable suspicion existed to support continued detention, the next question is whether the detention was reasonable in the context of an investigatory stop. See *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006). We consider both the length of the continued detention and the investigative methods employed. At the suppression hearing, Avery testified that from the time he first initiated the traffic stop to the time he searched Lang's person, approximately 45 minutes had elapsed. The record in this case shows no lack of diligence on Avery's part, nor any unreasonable delay in conducting the canine sniff. Accordingly, we determine that the length and method of detention were reasonable.

We conclude that the district court properly overruled Lang's motion to suppress. This argument fails.

*Motion for New Trial.*

Lang assigns that the district court abused its discretion in overruling his motion for new trial. He argues that the district court incorrectly found that exhibit 8 was not "newly discovered evidence" for the purposes of § 29-2101(5). He maintains that he only became aware of the additional three sentences in Avery's modified report when he read the PSI and that the State never provided the modified report during discovery. He alleges, therefore, that he is entitled to a new trial on these grounds.

Section 29-2101(5) permits a criminal defendant to be granted a new trial based on "newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial." Newly discovered evidence may not be evidence which could have been discovered and produced at trial with reasonable diligence. *State v. Lester*, 295 Neb. 878, 898 N.W.2d 299 (2017). Additionally, a defendant must show that the evidence is newly discovered, rather than merely newly available. See *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002) (holding that testimony of codefendant who offers testimony at subsequent trial after refusing to testify at defendant's first trial is not newly discovered evidence). A criminal defendant who seeks a new trial on the basis of newly discovered evidence must show that if the evidence had been admitted at the former trial it would probably have produced a substantially different result. *Id.*

The record reflects that Avery's modified police report was neither "newly discovered" nor "newly available" at the time Lang filed his motions for new trial. Indeed, Avery's testimony at both the suppression hearing and the trial itself included details found in the three additional sentences within Avery's modified report. It is difficult to discern how evidence that actually was admitted at trial may constitute newly discovered evidence for the purposes of § 29-2101(5). Rather, Lang's argument appears to be that the evidence was "newly discovered" because he did not receive it in the specific format he desired, i.e., a written police report.

On appeal, Lang does acknowledge that the details contained in Avery's modified report were adduced at the suppression hearing. However, Lang suggests that had he received a physical copy of exhibit 8 prior to the hearing, his trial counsel "could have cross-examined the trooper regarding the differences" between exhibit 7 and exhibit 8. Brief for appellant at 17. He further argues that highlighting the modifications to the police report would have cast doubt on Avery's credibility. Yet the Nebraska Supreme Court has repeatedly held that in order to justify a new trial,

newly discovered evidence must involve something other than the credibility of a witness who testified at trial. *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015).

Exhibit 8, Avery's modified police report, was not newly discovered evidence meriting a new trial for at least two reasons. First, it was not evidence that could not have been discovered and produced at trial. Rather, the information was freely available to Lang prior to trial, which he himself admits in his brief. Second, the evidence goes only to Avery's credibility as a witness, which is not an appropriate ground for the granting of a new trial.

We conclude that the district court did not abuse its discretion in denying Lang's motion for new trial. This argument fails.

*Ineffective Assistance of Counsel.*

Finally, Lang assigns that his trial counsel provided ineffective assistance. Lang has different counsel on appeal than he did at trial. When a criminal defendant's counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Anderson*, 305 Neb. 978, 943 N.W.2d 690 (2020). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide deficient performance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.* The record on direct appeal is sufficient to review a claim of ineffective assistance of trial counsel if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Lang assigns that he received ineffective assistance of trial counsel when his counsel (1) failed to provide him with discovery materials prior to the hearing on his motion to suppress and (2) failed to adequately prepare Lang for the suppression hearing. Although Lang separately assigns these errors, they are intertwined and are argued together in his brief. We therefore address these two related assignments together.

Lang argues that his attorney did not meet the standard of a reasonable defense counsel by failing to "provide discovery to [Lang] and to go over said discovery with [him]" before the hearing on his motion to suppress. Brief for appellant at 19. He suggests that had his trial counsel properly discussed defense strategy with him prior to the suppression hearing, he "could have been prepared and could have discussed testifying on his own behalf to combat the factors used against him in raising reasonable suspicion." *Id.*

We determine that the record conclusively demonstrates that Lang would be unable to prove prejudice resulting from this alleged deficient performance. As discussed above, Avery's testimony at the suppression hearing showed that his decision to extend the initial traffic stop was supported by reasonable suspicion. Whether or not Lang's trial counsel reviewed discovery materials with him prior to the hearing would not have altered this evidence. Lang suggests that his counsel was deficient for not discussing a method of adducing testimony that supplied an alternative explanation for the factors supporting Avery's reasonable suspicions. However, a determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018). Therefore, even if Lang's trial counsel had presented evidence tending to show that Lang was engaged in noncriminal conduct, it could not have altered the district court's analysis.

Based on this record, we conclude that Lang would be unable to prove prejudice arising from his counsel's conduct. This argument fails.

## CONCLUSION

We conclude that the district court did not err in overruling Lang's motion to suppress or his motion for new trial. We also conclude that Lang's claims of ineffective assistance of counsel fail. Accordingly, we affirm Lang's conviction and sentence.

AFFIRMED.